THE CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* PACE.

[No. 19,352. Filed June 16, 1961. Rehearing denied August 16, 1961. Transfer denied October 16, 1961, with concurring opinion 177 N. E. 2d 381.]

*Russell J. Wildman, Cole, Wildman & Cole,* of Peru,
*Fred W. Campbell,* and *Harker, Irwin, Campbell &
Harker, of* Frankfort, for appellant.

*J. O. Finney,* of Anderson, *W. J. Robison* and *Robison & Robison,* of Frankfort, for appellee.

KELLEY, J.—In this action by appellee against the appellant for damages allegedly resulting from the negligent operation by the latter of one of its freight trains, the jury, to which the formal issues were submitted for

trial, returned a verdict for appellee in the amount of $10,000.00. Consistent judgment on the verdict was entered and this appeal was taken therefrom.

Appellee's first paragraph of complaint, the material allegations of which appellant does not contend were not sustained by that evidence favorable to appellee, alleged, in substance, that appellant's railroad crosses at right angles a public highway, known as "old Kokomo Road," in Grant County, Indiana; that at and near the point of intersection said railroad runs generally north and south and said highway east and west; that at about 4:00 P.M. on April 5, 1956, appellee was driving a 1½-ton Ford truck west on said highway approaching and with the intent and purpose of crossing said intersection; that appellant was running a freight train toward said crossing from the north and after appellee's said truck, except the rear three (3) feet thereof, had passed over said crossing, appellant, with great force and violence, carelessly and negligently ran its said train into and against appellee's said truck, all as more particularly thereinafter alleged; that by reason of appellant's said negligence and carelessness appellee was injured, both temporarily and permanently, as described in detail. The second paragraph of complaint sought recovery for damages to appellee's truck.

The acts of negligence charged in the complaint consisted of appellant's alleged failure to give any signal, notice or warning of "its" approach; its failure to sound the train whistle distinctly not less than three (3) times, beginning not less than eighty (80) rods from the crossing; failure to ring the engine bells continuously, beginning not less than eighty (80) rods from the crossing; operating said train at a dangerous and excessive rate of speed of seventy (70) miles per hour; and

(d) Defendant carelessly and negligently failed to keep a lookout for persons and property, including plaintiff and plaintiff's truck upon said crossing.

(e) Defendant carelessly and negligently failed to apply the brakes on its train so as to avoid collision with plaintiff's truck.

The first paragraph of complaint prayed for $75,600.00, and the second paragraph prayed for $1,600.00 damage to the truck.

In addition to answers under the rules to the two paragraphs of complaint, appellant filed a third paragraph alleging the contributory negligence of appellee, and a cross-complaint for damages to its engine. The issues on the third paragraph of answer and the said cross-complaint were appropriately closed.

Appellant's overruled motion for a new trial consisted of seven specifications of error, with numerous subdivisions. We consider only those specifications and subdivisions which are unwaived. Appellant makes no complaint of the jury's verdict against it on the issues posed by its cross-complaint.

Appellant groups its specifications that the verdict is not sustained by sufficient evidence, that it is contrary to law, and that the court erred in overruling its motion for a directed verdict, and urges with relation thereto only that appellee was guilty of contributory negligence as a matter of law. As above stated, there is no contention by appellant that the evidence failed to establish its negligence as charged in the complaint.

On the question of contributory neglgience as a matter of law, appellant initiates with the concession that "the law limits consideration of only that evidence most favorable to the plaintiff (appellee)." Then appellant says that "Such evidence *would be his own testimony*, . . ." (Emphasis supplied.) Thereafter, appel-

lant gives a running statement of its interpretation of what the evidence shows, with related measurements, distances, and obstructions from different angles and positions, and frequent references to photographs and what they reflected. There was one quotation, also, from testimony of appellee. All of this is summed up by appellant's four questions to the effect of whether the minds of reasonable men could differ as to whether, under the evidence, the appellee could be said to be free from contributory negligence. Appellant says: "There is no escaping the fact: either he did not look or, if he did, he did not see what was there to be plainly seen in broad daylight." Citation of three cases follows.

Appellant next proceeds to urge that "Section 47-2114, B.I.S., required appellee to stop within 50 feet but not less than 10 feet from the nearest track of the railroad and not to proceed until he could do so safely if 'an approaching train is plainly visible and is in hazardous proximity to such crossing'." And that "It cannot be disputed the approaching train was plainly visible and in hazardous proximity to the crossing and the uncontradicted evidence shows appellee did not stop. He was therefore guilty of negligence as a matter of law." There ensues a definition of the word "stop"; what the statute required of appellee; that aside from the statute appellee had a duty to use due care in seeing "what was to be seen and hearing what was to be heard," with citation of authorities.

In many particulars appellee takes issue with appellant's said statement of the evidence. We may here note that the burden resting upon appellant under its answer of appellee's contributing negligence was to establish not only that appellee was negligent but that such negligence "proximately contributed to his injury." Quotation from *Baltimore & Ohio R.*

*Co.* v. *Reyher, Admx., et al.* (1939), 216 Ind. 545, 24 N. E. 2d 284. We quote again from the last cited case:

"Contributory negligence is ordinarily a question of fact for the jury. It is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men, that the question becomes one of law for the court. When the facts are of such nature and character as to be reasonably subject to more than one inference, the jury should be permitted to decide whether the party whose conduct is under inquiry was guilty of contributory negligence."

Appellant advances no contention, in argument, that the evidence referred to therein establishes that appellee's asserted negligence was the proximate contribution to his injury. It does say, however, with reference to provisions of the statute above referred to, that "It cannot be contended the accident would have happened" if appellee had "stopped" for a "sufficient length of time" to observe the surroundings and give his "undivided" attention to what there was to see and hear. It seems pertinent at this moment to observe that what amounted to a "sufficient length of time" and whether or not appellee gave his "undivided" attention to what he could see and hear were matters for the jury.

In our opinion, it is amiss to say, as appellant intimates, that, in this particular case, it is only the testimony of appellee to which consideration is to be limited in determining the question of contributory negligence. The jury could properly consider, we think, the photographs, the failure of appellant to sound its whistle and bell as alleged in the complaint, and all other circumstances and conditions attending the incident, in determining the issue of appellee's alleged contributory negligence and whether

such negligence proximately contributed to his injury and damage. Further, the jury was authorized to draw reasonable inferences from the whole of the evidence and "to determine what assertions made by a particular witness are true and what assertions made by the same witness are untrue." Quotes from *Lincoln National Bank & Trust Company of Fort Wayne* v. *Parker* (1941), 110 Ind. App. 1, 9, 34 N. E. 2d 190.

It would serve no beneficial purpose and would unnecessarily lengthen this opinion to here delineate the evidence adduced at the trial of this cause. Further, the several photographs to which appellant seems to attach much evidentiary value cannot be here satisfactorily reproduced. We have carefully and critically examined all of the evidence as set forth in the briefs of the parties, as well as the photographs found in the transcript, and we are satisfied that the evidence of all the facts, circumstances and conditions surrounding the alleged upon occurrence was such that reasonable men could very readily differ as to whether appellee was or was not contributorily negligent as pleaded in appellant's third paragraph of answer and whether his negligence, if any, proximately contributed to his alleged injury and damage. We think the issue of contributory negligence of appellee was properly submitted to the jury, that the verdict is not contrary to law, and that there was no error in overruling appellant's motion for a directed verdict.

Appellant's tendered instruction No. 27 was refused by the court. This is charged as error. This instruction, as set forth in appellant's brief, apparently, by the words "The above statute," referred to the provisions of §47-2114, Burns' 1952 Replacement. In argument appellant has not set forth a copy of the said statute as required by Rule 2-17 (e). Ordinarily, such infrac-

tion of the rule would render it unnecessary for us to determine the error sought to be asserted. We may note, also, that the same difficulty is experienced in the treatment of appellant's refused instruction No. 26 concerning which the appellant claims error in the refusal of the court to give. However, by reverting back to the instructions set forth in the earlier part of appellant's brief, we find the pertinent part of said statute quoted in appellant's given instruction No. 25. As quoted by appellant in said instruction No. 25, said statute provided that

> "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet but not less than ten feet from the nearest track of such railroad, and shall not proceed until he can do so safely, when, . . .
> "(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Said refused instruction No. 27 would have told the jury that if, as appellee approached the crossing, appellant's train was in plain view and in hazardous proximity of the crossing, the statute created an absolute duty on appellee to bring his vehicle to a complete stop; that this absolute duty on appellee cannot be escaped by his proof that his failure to stop was done in the exercise of due care. Said refused instruction No. 26 undertook to tell the jury the meaning of the word "stop" found in the statute and that if the jury found that appellee violated the statute by not bringing his vehicle to a complete and full stop, as defined in the instruction, such failure to so stop was negligence as a matter of law and if such failure proximately contributed to appellee's injuries, in the least degree, he cannot recover. We think that the subject matter of said refused instructions No. 27

and 26 was fully covered and given to the jury by appellant's given instruction No. 25. No harm or prejudice resulted to appellant by the refusal of the court to give said instructions and there was no error in such refusal.

By appellant's tendered instruction No. 37 the jury would have been told that even though the jury may find that the train crew failed to give the statutory signals of the approach of appellant's train, such failure did not relieve appellee from the duty of exercising due care in discovering the approach of the train, and if in the exercise of due care he could have discovered the approach of the train in time to avoid the collision, and did not, he was guilty of negligence and if such negligence proximately contributed to his injuries, the verdict should be for appellant. The court refused to give this instruction. Appellant urges that this instruction is a correct statement of the law and its refusal was prejudicial because appellee's given instruction No. 31 had told the jury that the appellee had a right to assume the signals would be given and appellee's given instruction No. 10 had told the jury that appellee had a right to rely upon the presumption that the signals would be given. That, therefore, the refusal to give appellant's said instruction No. 37 deprived the appellant of the right to tell the jury that the failure to give the signals did not relieve appellee from the duty of exercising due care to discover approaching trains. Further, that such refusal emphasized appellee's instructions that he had a right to rely on the presumption that the signals would be given.

There seems to be much semantics involved here. We are not impressed that the refusal to give appellant's said instruction No. 37 had the effect attributed thereto by appellant. There were several instructions given by

the court which told the jury of the duty of the appel-, lee to exercise due care and that he was not excused from the duty of looking and listening for an approaching train. For instance, appellant's given instruction No. 18 was as follows:

"While it is true that a traveler approaching a highway has a right, within certain limitations, to rely upon the assumption that a railroad company will exercise care in the operation of its trains over a highway crossing, still I instruct you that *such right of reliance does not excuse a traveler approaching such crossing from the duty of exercising reasonable care for his own safety,* and *does not excuse him from his duty with regard to looking and listening for an approaching train.*" (Emphasis supplied)

Without desiring to burden this opinion with extracts or quotations therefrom, reference is made to other instructions having a direct relation to the subject matter of appellant's said refused instruction No. 37, viz., appellant's given instructions numbered 23, 25, 29, 35, and appellee's given instruction number 2. We see nothing to the urged proposal that the refusal to give said instruction emhasized appellee's instructions on appellee's right to rely on the presumption that the signals would be given.

The court gave appellee's instruction No. 8 over appellant's objection. Appellant claims this was error. This instruction told the jury, in substance, that under the law of this state, whenever a person is driving a vehicle approaching a railroad crossing, and when a train is approaching within approximately 1500 feet of said crossing, and emits a signal which can be heard for that distance, and where the train is in a hazardous proximity to the crossing by reason of its speed or nearness, the driver of a vehicle has a duty to stop

within 50 feet, but not less than 10 feet, from the nearest track of said railroad. That if the jury found from the evidence that appellant's train was plainly visible and in hazardous proximity to the crossing by reason of the speed or nearness complained of, it was the duty of the appellee to stop within the said distances. That if it found from the evidence that appellant's train was not plainly visible for 1500 feet, or that said train was not sounding a signal which could be plainly heard for 1500 feet as it approached the crossing, then the requirement that appellee stop within said distances would not be applicable. Appellant objected to this instruction because, appellant says, the statute required appellee to stop if the evidence showed either that the train was within said 1500 feet of the crossing and emitting a signal which could be heard for that distance or if the approaching train was plainly visible and in hazardous proximity to the crossing; that the instruction told the jury that appellee did not have to stop, within the said distances, unless a train was approaching within approximately 1500 feet of the crossing and emitting a signal that could be heard for that distance and that the train was in hazardous proximity to the crossing by reason of its speed or nearness. Appellant further objected on the ground that the instruction relieved appellee from compliance with "a statute" of Indiana requiring drivers of vehicles to drive at an appropriate reduced speed when approaching a railroad grade crossing. That the last sentence of the instruction told the jury that appellee was not required to stop even though appellant's train was plainly visible and in hazardous proximity to the crossing and this was an incorrect statement of the law.

In argument appellant says that by the use of the word "and" instead of "or" the jury was told that

appellee did not have to stop unless the train was approaching approximately within 1500 feet of the crossing, emitting a signal that could be heard for that distance and if the train was in hazardous proximity to the crossing by reason of its speed and nearness. Also, that the court invaded the province of the jury since it did not incorporate the requirements in §47-2004, Burns' Indiana Statutes. Appellant makes no statement or showing that it tendered an instruction containing the asserted omissions. The instruction given was not mandatory. We do not think that the objected to instruction relieved the appellee from driving at an appropriately reduced speed when approaching the crossing. Further, the jury was instructed on the provisions of said above referred to statute by appellant's given instruction No. 47. Said objected to instruction No. 8, as given by the court, was more favorable to appellant than it seemingly had a right to expect. There was no error in the giving thereof.

Appellant also asserts error in the giving of appellee's tendered instruction No. 31. This instruction was not mandatory. In material substance it informed the jury that as the appellee approached the tracks of appellant he had a right to assume that any train of appellant approaching the crossing would give the required statutory signals by bell and whistle; that the failure to give such signals "not only is negligence per se on the part of the railway company, but it is a fact *which the jury may properly consider, together with all other pertinent facts,* in determining . . . whether the plaintiff was guilty of contributory negligence. . . ." (Our emphasis.) Appellant's objection to this instruction was, in substance, that it is an incorrect statement of the law in the exercise of due care as he approached and entered upon the tracks. That the instruction told

the jury that appellant "failed to give" the statutory signals and therefore invaded the province of the jury and told the jury the "weight and credence" to be given the evidence.

The complained of instruction, we think, should have been more aptly worded and is not one to be commended. However, we are not inclined to lend to the objected to statement the effect or meaning attributed thereto by appellant. The instruction, not being mandatory, must be read as a whole and in connection with all of the other instructions given to the jury. *Vance* v. *Wells* (1959), 129 Ind. App. 659, 159 N. E. 2d 586. Appellant's given instruction No. 16 told the jury that while appellant was required to use due care not to injure appellee, yet "the law imposed on the plaintiff (appellee) the duty of using *just as much care for his own safety.*" (Our emphasis) ; that if the jury found that appellee did not use the care of a reasonably careful and prudent person for his own safety, then he was guilty of negligence and if such negligence proximately contributed to his injuries he could not recover damages, even though appellant was negligent "in the manner in which it operated its train."

We are forced, for clarity, to repeat that appellant's given instruction No. 18 told the jury that

"While it is true that a traveler approaching a highway has a right, within certain limitations, to rely upon the assumption that a railroad company will exercise care in the operation of its trains over a highway crossing, still . . . such a right of reliance does not excuse a traveler approaching such crossing from the duty of exercising reasonable care for his own safety, and does not excuse him from his duty with regard to looking and listening for an approaching train."

Appellant's given instruction No. 19 told the jury that the duties of railroad companies and travelers upon

highways which cross such companies' tracks "are mutual and reciprocal, and no greater degree of care is required of one than the other." And appellant's given instruction No. 23 informed the jury that if the operators of appellant's train did not give certain statutory warnings within the exact distances or times before reaching the crossing, this would not entitle appellee to recover unless the jury also found that "such failure, if any, proximately caused the injury."

Each of appellant's given instructions numbered 29, 30, 33, 35, 36 and 47, respectively, in some respect, charged the jury as to the due care required of appellee under the circumstances and in some instances, as measured by that of a reasonably careful and prudent person under such circumstances, and that if appellee did not exercise that care, under the respective circumstances, he would be guilty of negligence and if such negligence proximately contributed to his injuries, the verdict should be for appellant. Appellant's given instruction No. 49 told the jury that it was to "determine the facts from the evidence submitted" and apply the law, as given by the court, to the facts proven by the evidence, and its instruction No. 12 said that the court did not, and did not intend to, express any opinion as to the truth of the complaint allegations, and it is the province of the jury to determine "whether or not such allegations have been established by a preponderance of the evidence." Additionally, there were also several instructions of the court itself and some given on appellee's behalf bearing upon the matters now being considered. In view of the array of instructions, to some of which we have adverted, covering, in various ways, all the suggested phases of the case, we find it difficult to accord ourselves with appellant's said objections to appellee's said instruction

No. 31. We find no prejudice resulting to appellant from the said instruction and are of the opinion that there was no error of the court in giving it. *New York, Chicago & St. Louis Railroad Company* v. *Henderson* (1957), 237 Ind. 456, 471, 146 N. E. 2d 531; *Callahan, Admr. of Estate of Patterson* v. *New York Central Railroad* (1955), 125 Ind. App. 631, 640, 125 N. E. 2d 263.

It is asserted by appellant that the court erred in giving appellee's instruction No. 10 over its objection thereto. Said instruction was, in substance, that the rights of a traveler on a highway crossed by a railroad are not subordinate or superior to those of the railroad, but equal; that each has a right to pass and each is bound to use ordinary care and diligence to avoid injury to the other; that travelers on the highway may act upon the presumption that the employees of a railroad will act in accordance with the legal rights and duties of the traveler and the railroad; that if the jury found from the evidence, if any, that appellant's employees failed to use ordinary care and diligence to avoid injury to appellee, and if the jury further found that appellee was free from contributory negligence, if any, then their verdict "may be" for appellee.

Appellant objected to this instruction, first, upon the ground that the stated presumption does not pertain unless appellee exercised due care in approaching and entering on the tracks. We have already mentioned several instructions, in connection with the alleged error in giving appellee's instruction No. 31, which informed the jury of the exercise of due care required of appellee under the circumstances. Further, in this objected to instruction No. 10, the court admonished the jury that "each (appellant and appellee) is bound to use

ordinary care and diligence to avoid injury to the other." We are not actively impressed with this part of appellant's objection.

Appellant further objected that the instruction "mandates" the jury to return a verdict if appellant's employees failed to use ordinary care and diligence to avoid injury to appellee, and if they found the latter free from contributory negligence, without limiting the consideration of the jury to the acts of negligence charged against it in the complaint. This is another instruction to which we would hesitate to recommend or lend our unqualified approval. However, we are of the opinion that the instruction is not mandatory. Rather, do we think that it must be considered with other instructions in the record. The general subject of the instruction appears to be to advise the jury that neither appellant nor appellee had superior or dominating rights at the crossing and that while each had a right to pass, such right was not absolute but relatively dependent upon the use of ordinary care and diligence by each to avoid injury to the other. The jury was then, rather ineptly, told that the traveler may "act" upon the presumption that the railroad's employees will "act" in accordance with the legal rights *"and duties"* of the traveler, and the legal rights *"and duties"* of the railroad. It being an instruction tendered by appellee, the legal principle thus declared was applied to a situation of the possible finding by the jury from the evidence, if there was any evidence on the point, that appellant's employees failed to use such ordinary care and diligence to avoid injury, if any, to appellee, and if the jury further found appellee to be free from contributory negligence.

It may be noted, of course, that while this particular instruction, standing alone, did not by expressly stated

words confine the words "ordinary care and diligence" to the acts of negligence charged in the complaint, neither did it limit the "contributory negligence" of appellee to the two acts of contributory negligence charged in the third paragraph of appellant's answer. In this respect the instruction could be said to be as improper for appellee as it was for appellant, although as to the former, the impropriety must be termed as invited and self administered. Appellant's given instruction No. 16 told the jury that if appellee was guilty of "any negligence" which proximately contributed to his injuries, he could not recover. The negligence was not limited to the negligence charged in appellant's third paragraph of answer. Therefore, it contained the same error as appellant claims with reference to said appellee's instruction No. 10. Therefore, in this respect, appellant is precluded from asserting error in the giving of said instruction No. 10. I.L.E., Appeals, Vol. 2, §500, note 39, p. 398, and cases cited on page 401.

The objected to instruction, which, we think, is not mandatory, falls within the well-established rules that instructions must be considered as a whole and that the primary point of inquiry, in considering the validity of an instruction, is whether the jury was misled thereby. See *Cleveland, Cincinnati, Chicago & St. Louis Railway Company* v. *Miller* (1905), 165 Ind. 381, 387, 74 N. E. 509; *Grand Trunk Western Railway Company* v. *Cather* (1931), 92 Ind. App. 563, 167 N. E. 551; *Evansville and Terre Haute Railroad Company* v. *Hoffman* (1941), 56 Ind. App. 530, 539, 105 N. E. 788. Also, that whether or not a claimed erroneous instruction possessed a determinative effect upon the result of a trial, is usually dependent upon the established facts of the particular case.

By its instruction No. 2, the court charged the jury that the burden was upon the appellee "to prove by a preponderance of all the evidence the material allegations of the complaint." And by its instruction No. 1, the court read the pleadings to the jury and then advised the jury that "These pleadings form the issue which you are to try and to determine." By appellee's instruction No. 3, the jury was instructed that whether or not there was negligence on the part of appellant *"as alleged"* was a question of fact for the jury. Appellee's instruction No. 19 told the jury that if it found from the evidence in the case that appellant was negligent "in any of the particulars *alleged in the complaint*" (emphasis supplied) which was the proximate cause of appellee's injuries, without negligence on the part of appellee, etc., the appellee is entitled to recover, and appellee's instruction No. 21 told the jury that in order for appellee to recover it was not necessary for him to establish all of the allegations of negligence "alleged in the complaint" but it is sufficient on the issue of negligence if the evidence established appellant to be negligent in any one or more of the "particulars alleged in the complaint," etc. Appellant's given instruction No. 12 advised the jury that the court had stated in its instructions the allegations of the complaint and that "it is your province" to determine whether or not "such allegations" have been established, etc.

Without further reference to the given instructions, it seems that, considering the instructions as a whole, the objected to instruction No. 10 could not reasonably be held to have misled the jury, in the respect complained of by appellant, nor does it appear logical that said objected to instruction, when considered together with the instructions referred to above, and others, could be construed to mean that the

jury could find for appellee because, as appellant argues, there was evidence of other accidents at the crossing and that at one time appellant had commenced the installation of flashers. Appellant, in argument on this phase of the case, makes no other mention of or allusion to any act of negligence on its part which was proved in evidence but not alleged in the complaint. Appellant further objected to said instruction No. 10 "for the reason" that it "directs a verdict" even though appellant's negligence may not have been the "sole proximate cause" of appellee's injuries. This part of the objection is not argued in appellant's brief and is considered waived. We think appellant has established no error in the giving of said appellee's instruction No. 10.

Appellee's instruction No. 12, given over appellant's objection, as quoted in appellant's brief, reads as follows:

"I instruct you that it is the duty of those running a locomotive to exercise reasonable care in looking ahead to discover persons or objects on the tracks at crossings, and to exercise care to avoid accidents. I further instruct you that it is the duty of those running a locomotive to use ordinary care in apprehending and acting on danger signals. If you find from the evidence, if any, that at the time and place herein complained of the defendant's employees failed to exercise reasonable care in looking ahead to see plaintiff on the tracks at said crossing, or that defendant's employees failed to exercise reasonable care to avoid striking plaintiff's truck, or that defendant's employees failed to exercise reasonable care in apprehending and acting on danger signals, then I instruct you that your verdict may be for plaintiff, regardless of the prior negligence of plaintiff, if any, if the failure of defendant's employees to do any of these things proximately caused the accident and injury, if any, herein complained of."

And appellee's instruction No. 24, also given over appellant's objection, as quoted in appellant's brief, is as follows:

"Even though you should find that the plaintiff was negligent in any particular, if you further find that by reason of plaintiff's negligence he was placed in a position of peril, and that the operators of the train saw the plaintiff and knew and appreciated his peril, and if you further find that such operators of the train with such knowledge could in the exercise of ordinary care have avoided striking the plaintiff, and did not do so, and if you further find that said operators of the train by reason thereof were negligent, and that such operators' negligence and not the negligence of the plaintiff was the proximate cause of the collision, then I instruct you that the plaintiff is not barred from recovery by reason of contributory negligence."

As these two instructions are akin in argued subject matter, we have set them out above and will at one time consider appellant's argued objections to both.

Appellant's first premise of objection to said instructions was that they instructed on the doctrine of last clear chance and said doctrine cannot be invoked in this case because it was not pleaded and there is no evidence from which the jury could determine whether or not the doctrine was applicable. On the point that the doctrine was not pleaded appellant offers no argument or authority and no further reference will be made to it, except to say that in our opinion rhetorical paragraphs 5(d) and (e), quoted in the forepart of this opinion, were sufficient to invoke the rule as a matter of pleading. The basic argument on the want of evidence phase is that there was no evidence from which the jury could have found that the engine crew knew of appellee's position of peril in sufficient time

to have avoided or averted the collision and, therefore, the instructions were outside the evidence.

Appellant clings to the view that the only evidence which could have any bearing on the issue came from the engineer and the brakeman. It is stated that the view of the engineer, seated on the right side of the engine, of the approaching truck was blocked by the forepart of the engine extending in front of him. Nevertheless, appellant further states that the engine was "75 or 80" feet from the crossing "when he first saw the truck, which was then 12 or 15 feet from the rails. He could just see the front end of the radiator, and thought it was going about 5 miles per hour, and that it would stop, and did not apprehend that a collision would occur until just when the crash happened. . . . His train was traveling 30 to 35 miles per hour, and had the brakes been applied when the crew first saw the truck the train would have hit before the brakes set up. It takes 3/5 of a second for one to think and act." The brakeman, seated on the left side of the engine, also saw the truck when it was about "75 or 80" feet east of the rail ". . . at which time he thought the truck was going to stop. He then turned his head, and then looked back, and the truck was going, and on the track, and he thought the truck had increased its speed." Now, we are not impressed that the jury was confined to that part of the evidence. The jury were privileged not to believe all the details of that testimony, particularly the engineer's confusing account. We think, also, there was other evidence before the jury which it could consider.

The evidence most favorable to appellee tends to establish the following facts: That the time of the occurrence was about 4 o'clock P.M. of April 5, 1956 and the day was clear and the weather dry; that no statu-

tory signals were sounded by appellant. Appellee's view of the track was obstructed until he was about 10 feet from the crossing; he was traveling in his truck at about 15 to 20 miles per hour as he approached the tracks; he listened and heard no warnings of an approaching train. The train was approaching the crossing at a speed of 50 to 60 miles per hour and, at the point where the brakeman first saw appellee's truck, there was a speed zone for engines limiting the rate of speed to not more than 40 miles per hour. When appellee arrived at a point at the track where he could see, he looked to the north and saw nothing on the track and, likewise, to the south. As he again looked to the north, he saw the approaching train for the first time, which train was at the Jay Street crossing, 183 feet north of Kokomo Road crossing over which appellee was proceeding. At this time the front end of his truck was over the east rail of the crossing. Then, at that time, just before the impact, were several short blasts sounded. Appellee said, in quotes from appellant's condensed recital of the evidence: "When I saw that train, I thought for just a second, and thought if I stop I will get hit here and the only thing I can do is give it gas and go on." There were no flasher or automatic blinker signals at the crossing. The engineer applied emergency brakes but not until the engine and, possibly, some of the box cars were going through the crossing and it appears he did not drop the sand until that time. He said: "I don't know whether he (appellee) would have had time to have gotten across had I applied the brakes fully and dropped the sand 75 feet from the crossing." The truck was struck near the rear wheels on the right side about 1¾ feet from the rear end thereof. The fireman or brakeman did not warn the engineer when the truck was first seen approaching the crossing. There

were drawings, a blackboard sketch, and many photographs, introduced by both parties, showing locations, distances, obstructions, points of view, etc., which were before the jury as evidence.

Appellant seems to urge that other than appellee's "version of how the accident occurred," the only evidence "bearing on this issue" was the testimony of the engineer and brakeman. This tenet appears to ignore the capacity of the jury to draw reasonable inferences from the whole evidence. It is not essential that appellee prove, as appellant suggests, that the operators of appellant's train had "actual" knowledge of appellee's peril. It is sufficient, we think, that the evidence shows such facts and circumstances as would authorize the jury to draw a reasonable inference that appellee's situation of peril was known to operators of appellant's train and that such knowledge was acquired in sufficient time and under such circumstances that the engine crew were afforded the last opportunity, in the exercise of due diligence, to avoid the collision with appellee's truck, notwithstanding the negligence of appellee may have been concurrent, continued, or his efforts to extricate himself ineffectively diligent. *Terre Haute, Indianapolis and Eastern Traction Company* v. *Stevenson* (1919), 189 Ind. 100, 123 N. E. 785.

From the evidence in the record before us, some of which we have above delineated, the jury, we think, would have been warranted in inferring and finding that appellee did not know of the approach of appellant's train until he looked to the north the second time; that at that time he was operating his truck at a speed of 15 to 20 miles per hour and the forepart of his truck was upon the east rail of appellant's track; that the latter's train was

then some 185 feet from the crossing and was traveling at a speed of 50 to 60 miles per hour in a 40 mile speed zone; that appellee realized his potential danger and endeavored to extricate himself by proceeding across the tracks at an increased rate of speed; that appellant's brakeman saw appellee's truck as it approached the tracks but did not warn the engineer of the approaching truck or that the speed of the train should be reduced; that appellee had proceeded across the tracks at an increased rate of speed and had cleared the tracks except for the rear 1¾ or 2 feet of the truck; that the engineer failed to apply the emergency brakes or drop the sand until the train was on the crossing. We think the evidence was such that the jury would have been justified in concluding that any negligence of appellee which resulted in the position of peril in which he and his property were placed, had ceased, and that thereafter appellant failed to use due care to avoid the collision and consequent injury to appellee and his truck; that appellant's later negligent failure to exercise due care and diligence under the circumstances was the proximate cause of appellee's injuries and damage and that appellee was without negligence which proximately contributed thereto.

In *Chesapeake and Ohio Railway Company* v. *Williams* (1943), 114 Ind. App. 160, 51 N. E. 2d 384, cited and relied upon by appellant, it was determined that appellant's liability, under the facts there made evident, hinged upon whether there was anything in the appellee's conduct during the time of the brakeman's observation of him and his approaching automobile to indicate to those in charge of appellant's train that he did not see the approaching train or was oblivious of its approach and probably would not stop. The court found nothing disclosed by the evidence that appellee's

conduct made any such indication to those in charge of the appellant's train. In the case at hand, however, appellee's unhurried approach to the crossing, his observed gaze to the south, his unchecked continuance across the tracks, the omission by appellant to give the statutory signals by whistle and bell, all, it seems to us, were record evidence of indications to the engine crew, and particularly the aforementioned brakeman, of appellee's then unawareness of the approach of the train and that appellee, because thereof, was not going to yield the right-of-way over the crossing to appellant's train.

Appellant urges that said objected to instruction No. 12 is "further erroneous" because "it tells the jury they may find for the plaintiff, 'regardless of the prior negligence of the plaintiff'." This contention, as we understand it, is predicated upon appellant's advanced theory that, under the evidence, the jury could have taken the view that appellee could have stopped before entering upon the tracks, in which event, the negligence of appellee would have been the proximate cause of his injuries because "down to the last instant, the plaintiff had a chance to avoid the injury, by stopping his slow-moving truck, before entering on the rails." Under this precept, appellant says the doctrine of last clear chance "is not applicable." It cites the case of *Wabash Railroad Company* v. *Tippecanoe Loan and Trust Company, Administrator* (1912), 178 Ind. 113, 98 N. E. 64, in support of its position. However, we think the later and better holding is found in the case of *Terre Haute, Indianapolis and Eastern Traction Company* v. *Stevenson, supra.*

The instruction must be considered as a whole and the meaning of a plucked statement or phrase out of the instruction, as appellant has done, must be determined

by its relation to the general intent of the instruction as found from the expressions made therein. In this instruction the court told the jury that it is the duty of those running a locomotive to use ordinary care in apprehending and acting on danger signals. Then the court instructed, that if the jury found from the evidence (1) that appellant's employees failed to exercise reasonable care in "looking ahead" to see appellee on the tracks, or (2) said employees failed to exercise reasonable care to avoid striking appellee's truck, or (3) said employees failed to exercise reasonable care in "apprehending" and "acting" on danger signals (numerals supplied), THEN (our capitalization) the verdict may be for appellee, regardless of his prior negligence, if any, IF (our capitalization) the failure of said employees to do any of said things "PROXIMATELY CAUSED" (our capitalization) the accident, etc. With this view of the instruction, it is clear that appellant has misconstrued the same and attached an unwarranted meaning to the selected phrase. The instruction adequately told the jury of the duty of the engine crew to exercise care and if their failure so to do proximately caused the accident, then their verdict may be for appellee, regardless of his prior negligence. By this instruction the verdict for appellee was made dependent upon the finding by the jury of appellant's want of care in the respects mentioned and that such want of care was the proximate cause of the accident. Contrary to appellant's proposal, the instruction did not authorize a recovery by appellee if his prior negligence was the "proximate cause of his injuries." The instruction, fairly considered, is not susceptible to appellant's suggested construction. That the instruction invaded the province of the jury, as appellant says in argument, was not a point contained in its objection

to the instruction. However, what we have already said disposes of the matter.

As to said objected to instruction No. 24 appellant says that it authorized recovery by appellee if appellant was guilty of neligence not charged in the complaint. We have heretofore considered and determined this point in connection with appellant's objection to appellee's given instruction No. 10. Appellant further urges that said instruction No. 24 was erroneous because "even though appellee was guilty of negligence in not extricating himself from his position of peril" the instruction told the jury that "he could recover, notwithstanding such negligence on his part." While this ground of asserted error is rather tenuous and semantic, in nature, yet it fundamentally involves the same subject matter we have heretofore covered. The instruction was not mandatory and the ground of complaint was not contained in the objections thereto. We may note, however, as apropos, what was said in *The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company* v. *Pence* (1916), 185 Ind. 495, 502, 113 N. E. 7:

> ". . . Even if the appellee was negligent in getting his engine fast on the track, there was, under the allegations here, a subsequent duty devolving on appellant to exercise ordinary care to avoid injury to the property. (Citing cases.) It is the duty of those running a locomotive engine to exercise ordinary care in looking ahead to discover persons or objects on the tracks at highway crossings, and to exercise like care to avoid accidents, and, to that end, to use ordinary care in apprehending and acting on danger signals. A lack of such care, proximately causing injury, may entitle the injured party to relief regardless of his antecedent negligence, and regardless of the lack of actual knowledge of the peril by the party causing the injury."

See, also, *Evansville, etc., Traction Co.* v. *Johnson* (1912), 54 Ind. App. 601, 610, 97 N. E. 176.

We find no error in the court in the giving of appellee's said instructions numbered 12 and 24, respectively.

It is now asserted by appellant that the verdict is contrary to law because only one general verdict was rendered. The basis of the said contention is that there were two paragraphs of appellee's complaint, the first for damages for personal injuries, and the second for damage to property, and that under the provisions of §2-304, Burns' 1946 Replacement, the jury was required to designate by its verdict the finding on each separate cause of action. Appellant's argument is to the effect that certain incompetent evidence of expenditures made on appellee's truck was permitted to go to the jury and, by the general verdict, appellant has been deprived of knowing whether the amount included by the jury in the verdict was excessive. Appellant does not challenge in argument that the amount of recovery was too large and we therefore think that this argument is unavailing to demonstrate harm to appellant, as it suggests.

Appellant rests heavily upon *John's Cash Furniture Stores, Inc., et al.* v. *Mitchell* (1955), 126 Ind. App. 231, 125 N. E. 2d 827, to support its specification that the verdict is contrary to law. We considered this same question rather extensively in the case of *The New York Central Railroad Company* v. *John Glad* (1959), — Ind. App. —, 163 N. E. 2d 131, 138 (point 4), and concluded adversely to the position appellant advances here. We find no reason to now alter our views there expressed.

Lastly, appellant specifies error in the overruling of its "objections" to appellee's offered Exhibits AA, CC,

DD, EE, FF, LL, overruling its "objection" to the introduction of appellee's Exhibits X, Y and Z, "excluding" its "offered" Exhibits 10, 14, 15, 16, 17, 18 and 19, and "sustaining" appellee's "objection" to three questions put by appellant to appellee on cross-examination of the latter.

Said appellee's Exhibits AA, CC, DD, EE, FF, LL, and X, Y, Z, were copies of appellee's gross income tax returns. It is appellant's expressed theory that the admission of said returns and checks in payment of tax, were harmful to it because they were calculated to impress the jury that appellee's business was very profitable, and that appellant suffered further harm when the court excluded from the evidence said Exhibits 14, 15, 16, 17, 18 and 19, which were copies of appellee's federal income tax returns, and which, appellant says, it offered for the purpose of showing that the said gross income tax returns did not truly reflect the earnings of appellee. The record reveals that appellee's books of account for the years covered by said tax returns were offered and admitted in evidence without objection. Said returns were prepared from the material and data contained in said books of account. Therefore, the asserted errors, if any, were harmless. 2 I.L.E., Appeals, §§620, 624, 617. Further, said tax returns had relation to only one issue, namely, appellee's alleged damages. Appellant has not briefed or argued the specification of its motion for new trial that the assessed amount of recovery is too large. Said specification, therefore, is considered waived. Rule 2-17(f). Consequently, any error in the admission or exclusion of said tax returns is regarded as harmless. *Chesapeake and Ohio Railway Company of Indiana* v. *Perry* (1918), 66 Ind. App. 532, 541, 118 N. E. 548.

During the cross-examination by appellant of its District Claim Agent, who had been called as a witness by appellee, appellant offered in evidence its Exhibit No. 10, which purported to be a signed written statement of appellant's now deceased fireman who was on duty at the time of the accident. Upon appellee's objection the court rejected the Exhibit. Appellant's motion for a new trial does not set out the objections made to the said Exhibit 10. Thus, no question as to the specified error is presented to us. *Loehr* v. *Meuser* (1950), 120 Ind. App. 630, 635, 93 N. E. 2d 363.

Appellant claims error in the sustaining by the court of appellee's objection to three questions put by appellant to appellee on cross-examination of the latter by the former. Appellant's motion for a new trial sets out only the question it put to the witness. The objection made by appellee to the question and the ruling of the court thereon are not shown. Under such circumstances no question is presented to us for review. Cases to support this firmly entrenched principle are legion. The most important and particularized authorities, as well as excellent text enunciation, will be found in I.L.E., *Appeals,* Vol. 1, §172, p. 656, and copious note references.

We do not find that appellant has established error by the record.

Judgment affirmed.

Pfaff, C. J., and Bierly, Gonas, JJ., concur.

NOTE.—Reported in 175 N. E. 2d 895. Transfer denied, Landis, C. J., Achor, J., concurring with opinion 177 N. E. 2d 381.